UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLLEEN HUELGA,

                    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.

_____/

Case No. 07-15230

Avern Cohn
U.S. District Judge

Michael Hluchaniuk
U.S. Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 10)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On December 7, 2007, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to <u>28 U.S.C. § 636(b)(1)(B)</u> and Local Rule 72.1(b)(3), District Judge Avern Cohn referred this matter to referred this matter to Magistrate Judge R. Steven Whalen for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits.  (Dkt. 2).  On January 15, 2008, this matter was reassigned to the undersigned.  (Dkt. 3). This matter is currently before the Court on cross-motions for summary judgment.

(Dkt. 9, 10).

B.   Administrative Proceedings

Plaintiff filed the instant claims on February 24, 2004, alleging that she became unable to work on August 26, 2003.  (Tr. at 51-53).  The claim was initially disapproved by the Commissioner on August 23, 2004.  (Tr. at 23). Plaintiff requested a hearing and on September 21, 2006, plaintiff appeared with counsel before Administrative Law Judge Michael E. Finnie (ALJ), who considered the case *de novo*.  (Tr. at 239-267).  In a decision by the Appeals Council dated December 18, 2006, the ALJ found that plaintiff was not disabled. (Tr. at 16-22).  Plaintiff requested a review of this decision on December 22, 2006. (Tr. at 10).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1 and AC-2 , Tr. at 7), the Appeals Council, on October 5, 2007, denied plaintiff's request for review.  (Tr. at

_____

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

Report and Recommendation
Cross-Motions for Summary Judgment
*Huelga v. Comm'r*; No. 07-15230

4-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   STATEMENT OF FACTS

### A.   ALJ Findings

Plaintiff was 49 years of age at the time of the most recent administrative hearing.  (Tr. at 243).  Plaintiff's relevant work history included approximately one year as an assembler and two years a general clerk.  (Tr. at 91).  In denying plaintiff's claims, defendant Commissioner considered degenerative disc disease and bilateral carpal tunnel syndrome as possible bases of disability.  (Tr. at 18).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since August 26, 2003.  (Tr. at 18).  At step two, the ALJ found that plaintiff's degenerative disc disease and bilateral carpal tunnel syndrome were "severe" within the meaning of the second sequential step.  (Tr. at 18).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled

one of the listings in the regulations.  (Tr. at 19).  At step four, the ALJ found that

plaintiff was not disabled because she could perform her previous work.  (Tr. at

19).  The ALJ then found that plaintiff had the residual functional capacity "to lift

and/or carry 20 pounds occasionally and 10 pounds frequently; stand and or walk

for six hours of an eight-hour workday; sit six hours of an eight hour workday; and

work where she avoids concentrated exposure to vibration."  (Tr. at 19).

The ALJ also found plaintiff's credibility to be lacking in several respects.

While he found that the claimant's medically determinable impairments could

reasonably be expected to produce the alleged symptoms, he also concluded that

"the claimant's statements concerning the intensity, persistence, and limiting

effects of these symptoms are not entirely credible" because her "contentions are

not supported to the extent alleged in view of her history of medical treatment, the

objective medical evidence, the treating source observations and opinions, and her

activities of daily living."  (Tr. at 20).  For example, the ALJ found plaintiff's

"allegation of significant medication side effects is not supported to the degree

which the claimant has contended."  *Id*.  The ALJ also concluded that plaintiff had

not had the "extensive treatment such as physical therapy, occupational therapy,

epidural injections; or other medically appropriate treatment measures generally

expected with debilitating musculoskeletal conditions."  *Id*.  Thus, the ALJ

concluded that plaintiff's complaints were "inconsistent with the clinical sings [sic] and diagnostic findings, which disclose only minor abnormalities." *Id*. According to the ALJ, the record revealed infrequent treatment for plaintiff's allegedly debilitating symptoms, and the medical records showed improvement in her carpal tunnel syndrome with surgical intervention. *Id*. Further, despite plaintiff's claims of significant hand limitations because of her carpal tunnel condition, "she has admitted that she can cook, do light cleaning, do the laundry, iron weekly, shop for groceries, do some reading, do some gardening, use a driving lawn mower, and drive an automobile." (Tr. at 20, citing, Exhibit 6E).

The ALJ also concluded that no treating medical source indicated that plaintiff had significant functional restrictions. The ALJ declined to give controlling weight to Dr. Levin's August 27, 2003 assessment that plaintiff should be off-work from January 31, 2003 to February 1, 2004. (Tr. at 20, citing, Exhibit 3F, p. 10). Dr. Levin did not provide an explanation for the need for plaintiff's absence from work and he did not provide any medical findings in support of his conclusion. *Id*. The ALJ also found Dr. Levin's statement to be "somewhat inconsistent with the physical examination findings of August 27, 2003." *Id*. Specifically, Dr. Levin noted that although plaintiff had some bilateral hand weakness, "her deep tendon reflexes were normoreactive throughout." Also, her

sensory examination was "intact to light touch, vibration, position, and proprioception."  Plaintiff had no tremor or dysmetria and her rapid alternating and fine movements were intact. *Id*.  Dr. Levin noted that plaintiff's gait was normal, and that she was able "to heel, toe, and tandem walk without difficulty." (Tr. at 20, citing, Exhibit 3F, p. 7).

On the other hand, as noted by the ALJ, the state agency reviewer suggested that plaintiff was "capable of lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking six hours in an eight-hour workday, sitting six hours in an eight-hour workday, and doing unlimited pushing and/or pulling." (Tr. at 20).  The examiner recommended that plaintiff avoid concentrated exposure to vibration.  (Tr. at 20, citing, Exhibit 7F).

Based on the RFC, the ALJ concluded that plaintiff was able to perform her past relevant work as a general clerk.  (Tr. at 21).  As noted by the ALJ, the vocational expert testified that the claimant has had past relevant work as a light, unskilled assembler and as a light, unskilled general clerk.  (Tr. at 21).  The vocational expert testified that an individual of plaintiff's age, education, past work experience, and residual functional capacity would be capable of performing plaintiff's past relevant work activities as both an assembler and as a general clerk. (Tr. at 21).  Plaintiff worked as a general clerk within the last 15 years, worked at

that job for more than one year, and was able to learn the job.  (Tr. at 21).  In this position, plaintiff did not lift or carry more than 10 pounds frequently and 20 pounds (and possibly up to 30 pounds) on an occasional basis as a general clerk. (Tr. at 21).  Further, during her typical workday as a general clerk, plaintiff walked six to eight hours, stood six to eight hours, sat one to one and half hours, and did not use vibratory tools.  (Tr. at 21, citing, Exhibit 5E (Tr. at 92)).

The vocational expert testified that an individual like plaintiff would be capable of performing this light, unskilled general clerk job and the vocational expert's testimony is pertinent in that it is consistent with the information contained in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (SOC) (SSR 00-4p). Thus, the ALJ concluded, after comparing plaintiff's residual functional capacity with the physical and mental demands of the general clerk work, that plaintiff is able to perform this job as she actually performed it and as it is generally performed in the national economy.  (Tr. at 21).

B.     Parties' Arguments

1.     Plaintiff's claims of error

Plaintiff argues that the ALJ committed legal error based on the VE's testimony to hypotheticals three and four or, as of Ms. Huelga's 50th birthday in

2006, based on hypothetical number two.  (Dkt. 9, p. 12, citing, Tr. at 265).

Plaintiff argues that the VE's testimony was flawed and, therefore, cannot serve as

substantial evidence in the denial of plaintiff's claim.  (Dkt. 9, p. 6).  The ALJ

writes "in comparing the claimant's [RFC] with the physical and mental demands

of the general clerk work, the undersigned finds that the claimant is able to

perform it as she actually performed it and as it is generally performed in the

national economy."  (Dkt. 9, p. 7, citing, Tr. at 21).  Plaintiff points out that, at the

hearing, the ALJ asked the VE four separate hypotheticals, but only the first

hypothetical to any jobs and that the first hypothetical is different that the RFC

listed in the decision.  *Id.*  Plaintiff also points out that the first hypothetical is

taken from the Physical RFC Assessment form completed by an enhanced

examiner rather than a doctor.  (Dkt. 9, p. 7, citing, Tr. at 184-191).

The second hypothetical dealt with a sedentary exertional level of work and

led the VE to testify that such an individual would be precluded from performing

plaintiff's past relevant work.  The third and fourth hypotheticals were based on

testimony from plaintiff at the hearing and led the VE to testify that such

individuals would be precluded from plaintiff's past relevant work as well as

competitive employment in the economy.  (Dkt. 9, p. 7, citing Tr. at 265).  Plaintiff

asserts that her testimony at the hearing regarding her prior work plainly placed

her past relevant work outside the RFC for lifting only up to 20 pounds because there would be times when lifting rose above that limitation. (Dkt. 9, p. 8).

Plaintiff also complains that the ALJ failed to properly assess her credibility. (Dkt. 9, pp. 9-12). First, plaintiff finds fault with the ALJ's conclusion that her limitations were not as severe as she claimed because she did not need to wear wrist splints all the time because she was not working and could stop what she was doing at any time that they bothered her. (Dkt. 9, pp. 9-10). Plaintiff also claims that the ALJ improperly found her ability to do light house work as inconsistent with her stated limitations and asserts that plaintiff's ability to perform certain ADLs is not evidence of her ability to do light duty work. (Dkt. 9, p. 10). Plaintiff also argues that ALJ's interpretation of Exhibit 6E (plaintiff's Function Report) was entirely inaccurate. (Dkt. 9, pp. 11-12).

### 2.    Commissioner's counter-motion for summary judgment

The Commissioner asserts that plaintiff fails to appreciate that the ALJ actually found that she could return to her past work as a general office clerk and not as an assembler. (Dkt. 10, p. 8). The Commissioner further argues that plaintiff makes no attempt to explain why she could not return to the general clerk job. *Id*. Rather, plaintiff merely relies on her statement at the hearing that she "could not do the job." (Dkt. 10, p. 8, citing, Tr. at 259).

The Commissioner argues that even without the vocational expert testimony, the substantial evidence supports the ALJ's finding that plaintiff could return to her past relevant work as a general clerk. (Dkt. 10, p. 8). The Commissioner points to plaintiff's description of her general clerk job when she completed paperwork for the agency as filing, copying, distributing papers and boxes. (Dkt. 10, p. 8, citing, Tr. at 92). The vocational expert asked plaintiff some questions during the hearing to clarify the clerk position and she again described this job as filing, copying, distributing papers and boxes. (Dkt. 10, p. 8, citing, Tr. at 261-63). Plaintiff was on her feet the majority of the day because the warehouse was large. (Dkt. 10, p. 8, citing, Tr. at 92, 261-63). Based on plaintiff's description, the vocational expert classified this work as a general clerk position at the light exertional level both as she performed it and as described in the DOT. (Dkt. 10, p. 8, citing Tr. at 264). According to the Commissioner, given plaintiff's RFC, the description of the job as actually performed, and the vocational expert's explanation that this was a light job as described by the DOT, the ALJ reasonably concluded that plaintiff could return to that work. (Dkt. 10, p. 8, citing, *Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987)* (Commissioner may rely on the requirements of the job as the claimant performed it or on the requirements of the job as it is generally performed in the

national economy)).

The Commissioner also disputes plaintiff's claim that the ALJ failed to consider the opinion of her treating physician as to her limitations to grasp, grip, or lift more than 5-10 pounds.  (Dkt. 10, p. 9).  The Commissioner suggests that because plaintiff fails to point to the treating physician's opinion, even in her statement of facts, that she has waived this argument.  (Dkt. 10, p. 9, citing, *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.")).

Second, the Commissioner argues that if plaintiff is referring to Dr. Levin, his opinion is less than clear or credible. The Commissioner asserts that Dr. Levin did not opine that plaintiff was unable to grasp, grip, or lift more than five or ten pounds.  (Dkt. 10, p. 9).  Rather, as the ALJ explained, Dr. Levin issued an opinion in August 2003, stating that plaintiff was to "remain off work" from January 31, 2003, to February 1, 2004, which neither provided an explanation for plaintiff's need to be off work, nor noted the medical findings that would support such a need.  (Dkt. 10, p. 9, citing, Tr. at 20, 151).  The Commissioner further points out, as the ALJ noted, that Dr. Levin's examination findings in August

2003 contradicted his own opinion.  (Dkt. 10, p. 9, citing, Tr. at 20).  For example, while Dr. Levin found some bilateral hand weakness, plaintiff's deep tendon reflexes were normal, her sensory examination was intact, she had no tremor, and her rapid alternating and fine movements were intact.  (Dkt. 10, p. 9, citing, Tr. at 20, 148).   Further, Dr. Levin noted that plaintiff's gait was normal and that she was able to heel, toe, and tandem walk without difficulty.  (Dkt. 10, p. 9, citing, Tr. at 20, 148).  By way of further example, the Commissioner points out that, in October 2003, Dr. Levin noted that plaintiff had severe bilateral carpal tunnel syndrome and cervical radiculopathy established by a cervical spine MRI scan; however, plaintiff's carpal tunnel syndrome improved after her April 2005 surgery and her intermittent musculoskeletal conditions were treated conservatively.  (Dkt. 10, pp. 9-10, citing, Tr. at 10, 138, 155, 208-09, 210-11; and 20 C.F.R. § 404.1529(c)(3)(v) (claimant's treatment history is considered by ALJ in evaluating credibility of subjective complaints).

The Commissioner also objects to Dr. Levin's opinion as a mere "conclusory statement rather than specific restrictions," which was reasonably discounted by the ALJ.  (Dkt. 10, p. 10, citing, 20 C.F.R. § 404.1527(e)(1) (The ultimate determination of whether a claimant is "disabled" within the meaning of the Act rests with the Commissioner, not with the treating physician.); *see also*

Social Security Ruling (SSR) 96-5p, 61 Fed.Reg. 34471, 34474 (treating physician's conclusory opinion that an individual is "disabled" is never entitled to controlling weight or special significance).  According to the Commissioner, the ALJ did not, as plaintiff suggests, simply accept the opinion of the agency examiner over plaintiff's treating physician.  (Dkt. 10, p. 10).  Rather, the ALJ noted that the agency examiner, Norman Zink, suggestion that plaintiff was capable of performing light work and reviewed the medical bases for this opinion.  (Dkt. 10, p. 10, citing, Tr. at 20).  Specifically, the Commissioner points out that Mr. Zink's report was issued after plaintiff had seen Dr. Simpson for a consultative examination in August 2004.  (Dkt. 10, p. 10, citing, Tr. 177-81).  Dr. Simpson found (1) no overt evidence of nerve root impingement because there was no obvious reflex, motor, or sensory changes; (2) no joint instability, enlargement, or effusion; (3) mildly diminished grip strength; (4) unimpaired dexterity (plaintiff could pick up a coin, button clothing, and open a door; (5) that plaintiff had no difficulty getting on and off the examination table; (6) that plaintiff had no difficulty heel and toe walking; (7) that plaintiff had no difficulty squatting or hopping; (8) that plaintiff's cervical range of motion was only slightly decreased; and (9) that plaintiff's wrist range of motion was normal, bilaterally.  (Dkt. 10, pp. 10-11, citing, Tr. at 177-181).  Thus, according to the Commissioner,

Mr. Zink's suggestion of light work was reasonable and supported by Dr. Simpson's consultative examination reports. (Dkt. 10, p. 11). The Commissioner asserts that this is not an instance of the ALJ just choosing one opinion over another, but rather, is an example of reviewing the record evidence to establish the most reasonable RFC. (Dkt. 10, p. 110). In so doing, the ALJ weighed the evidence made reasoned decision about the claimant's ability to work. (Dkt. 10, p. 11). The Commissioner suggests that the Court must not retry the case or resolve conflicts in the evidence, as plaintiff requests. *Id.*, citing, *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("This court does not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility.").

The Commissioner also disputes plaintiff's claims that the ALJ improper assessed her credibility. (Dkt. 10, pp. 11-13). In rejecting plaintiff's claim that she no longer wore wrist splints because she was not working, the Commissioner states that the ALJ properly relied on medical reports noting that plaintiff did not usually wear wrist splints or braces, and medical reports finding normal ranges of motion in her wrists. (Dkt. 10, pp. 12, citing, Tr. at 20, 179). More importantly, the Commissioner suggests that these limitations, if any, relate only to her former job as an assembler, which the ALJ concluded she was unable to do. (Dkt. 10, p.

12).

The Commissioner suggests that plaintiff misunderstands the nature of a credibility finding as it relates to activities of daily living.  (Dkt. 10, p. 12).  The ALJ did not state that plaintiff was without pain or impairment when he concluded that her ADLs suggested that she was capable of light work.  *Id.*  Plaintiff's ADLs were not used as "proof" that she could work, but rather, were used by the ALJ to explain his reasoning as to one of the many factors he used to assess plaintiff's credibility.  *Id.*

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

1986).

 This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

Walters, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  Rogers, 486 F.3d at 247, quoting, Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  McClanahan v.

Comm'r of Soc. Sec., 474 F.3d 830, 833 (6th Cir. 2006); Mullen v. Bowen, 800

F.2d 535, 545 (6th Cir. 1986) (en banc).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion."  Rogers, 486

F.3d at 241; Jones, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  Felisky v. Bowen, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, Mullen, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

        1.    Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

accord, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R.

§ 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in

substantial gainful activity, benefits are denied without
further analysis.

Step Two:  If the claimant does not have a severe
impairment or combination of impairments, that
"significantly limits...physical or mental ability to do
basic work activities," benefits are denied without
further analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston, 245 F.3d at 534*.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin, 475 F.3d at 730*.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

2.   Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole.  20

C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight."  Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996).  The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record."  *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'"  *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted).  "Claimants are entitled to receive good reasons for the weight accorded

their treating sources independent of their substantive right to receive disability

benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007).

"The opinion of a non-examining physician, on the other hand, 'is entitled to little

weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams*

*v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).

        C.    <u>Analysis and Conclusions</u>

        1.    Treating physician evidence.

In weighing the opinions and medical evidence, the ALJ must consider

relevant factors such as the length, nature and extent of the treating relationship,

the frequency of examination, the medical specialty of the treating physician, the

opinion's evidentiary support, and its consistency with the record as a whole. 20

C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source

is entitled to more weight than a non-examining source and a treating physician's

opinion is entitled to more weight than a consultative physician who only

examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision

denying benefits "must contain specific reasons for the weight given to the

treating source's medical opinion, supported by the evidence in the case record,

and must be sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's opinion and the reasons for

that weight." Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). And, the ultimate "determination of disability is the prerogative of the [ALJ], not the treating physician." *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

In this case, the ALJ declined to give controlling weight to Dr. Levin's assessment because he did not provide an explanation for the need for plaintiff's absence from work and he did not provide any medical findings in support of his conclusion. (Tr. at 20, citing, Exhibit 3F, p. 10). The ALJ also found Dr. Levin's statement to be "somewhat inconsistent with the physical examination findings of August 27, 2003." *Id*. On October 9, 2003, based on plaintiff's EEG results, Dr. Levin found bilateral carpal tunnel syndrome and C6-7 radiculopathy. (Tr. at 138). As noted by the ALJ, Dr. Levin's "off-work" note does not contain any specific restrictions. (Tr. at 151). Plaintiff's claim – and Dr. Levin's conclusions – appear based solely on the mere existence of her conditions, rather than on any resulting impairments or specific restrictions. This is insufficient to establish an inability to work. *See e.g.*, *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240

(6th Cir. 2002) (The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."); *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004)* ("A claimant's severe impairment may or may not affect his or her functional capacity to do work.  One does not necessarily establish the other."); *Griffeth*, 217 Fed.Appx. at 429 ("The regulations recognize that individuals who have the same severe impairment may have different residual functional capacities depending on their other impairments, pain, and other symptoms.").  Further, Dr. Levin's bare conclusion of "disability" is not supportive of plaintiff's claim that she is not able to perform her past work as a general clerk, given that neither Dr. Levin nor any other medical source articulated any specific physical restrictions on plaintiff.  *See Maher v. Sec'y of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir. 1987), citing, *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions constitutes substantial evidence for a finding of non-disability.").  Thus, the ALJ correctly concluded that Dr. Levin's opinion was not supported by the medical evidence in the record correctly declined to give it controlling weight.

2.      Hypothetical question and credibility

"The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 *F.Supp.2d 489, 497 (E.D. Mich. 2005)*.  The ALJ  is only required to incorporate the limitations that he finds credible.  *Casey v. Sec'y of Health and Human Serv.*, 987 F. 2d 1230, 1235 (6th Cir. 1993).  This obligation to assess credibility extends to the claimant's  subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476.

The ALJ concluded that, based on plaintiff's work history, that two positions constituted her relevant past work:  (1) general clerk; and (2) assembler.  The VE concluded that both jobs were light and unskilled.  Based on the first hypothetical posed by the ALJ, the VE concluded that person with claimant's history and RFC could still perform both of these jobs:

> Q      Let me ask you to consider a hypothetical individual same age, background and vocational experience as the claimant who had a Residual Functional Capacity to allow for occasional lifting and carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and walking with normal breaks for about 6 hours in an 8 hour workday, sitting with normal

breaks for about 6 hours in an 8 hour workday, no
limitations with regard to pushing Or pulling, occasional
climbing of ramps and stairs, avoiding concentrated
exposure to vibration. Assuming a hypothetical
individual with that Residual Functional Capacity, could
such an individual do any of the claimant's past work
either as the claimant did it or generally as done in the
economy?

A      Yes, I think that a person could do both of those
jobs.

(Tr. at 264).  Using the second hypothetical posed by the ALJ, the claimant would

be precluded from performing either job:

Q      Let me ask you to consider a hypothetical
individual with the same background as the claimant
who had a Residual Functional Capacity which allowed
for lifting and carrying 10 pounds or less, standing and
walking with normal breaks and rest periods for about --
at least 2 hours in an 8-hour workday, sitting with
normal breaks for about 6 hours in an 8-hour workday,
again no limitations with regard to pushing and pulling,
occasional climbing of ramps and stairs, avoiding
concentrated exposure to vibration.  Assuming a
hypothetical individual with that Residual Functional
Capacity, would I be correct that such an individual
would be precluded from the claimant's past work either
as the claimant did it or generally as done in the
economy?

A      Yes.

(Tr. at 265).

Plaintiff complains that the ALJ erred by finding she could perform her past

relevant work and that the RFC is inconsistent with the hypothetical.  The Commissioner argues that plaintiff fails to acknowledge that the ALJ found only that plaintiff could perform her past relevant as a general clerk, not as an assembler.  While both positions fall into the category of light, unskilled work, their demands are different, as noted by the ALJ.  In the general clerk position, plaintiff did not lift or carry more than 10 pounds frequently and 20 pounds (and possibly up to 30 pounds) on an occasional basis.  (Tr. at 21).  Further, during her typical workday as a general clerk, plaintiff walked six to eight hours, stood six to eight hours, sat one to one and half hours, and did not use vibratory tools.  (Tr. at 21, citing, Exhibit 5E).  Plaintiff had two assembler jobs.  (Tr. at 93-94).  The first required her to stand for 8 hours, handle and grasp large objects for 8 hours and required bending and rolling approximately 60 pounds.  (Tr. at 93).  The second assembler job required plaintiff to sit half the day and stand half the day, handle, reach, and grasp small and large objects for 8-10 hours per day, and lift 10-15 pounds frequently.  (Tr. at 94).

Contrary to plaintiff's argument, the ALJ conclusions did not precisely follow either hypothetical posed above.  Rather, the ALJ concluded that plaintiff was precluded from performing her work as an assembler, but that the medical evidence did not support an inability to perform as a general clerk.  The ALJ based

Report and Recommendation
Cross-Motions for Summary Judgment
*Huelga v. Comm'r*; No. 07-15230

this conclusion in part, on the findings of the state agency reviewer, who suggested that plaintiff was "capable of lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking six hours in an eight-hour workday, sitting six hours in an eight-hour workday, and doing unlimited pushing and/or pulling."  (Tr. at 20).

In reaching his RFC determination, the ALJ also concluded that plaintiff's self-described limitations were not entirely credible.  The ALJ's obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate."  *Jones*, 336 F.3d at 476.  When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses.  *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999).  An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

According to the VE, someone with plaintiff's limitations, as described by

the state agency examiner could perform both the jobs of a general clerk and an assembler.  Thus, contrary to plaintiff's argument, the ALJ's RFC finding did not wholly adopt the assessment of the state agency examiner as set forth in the hypothetical posed to the VE.  Rather, the ALJ's conclusion that plaintiff could perform her past work as a general clerk was based in part on the VE testimony, in part on the state agency examiner, and on the medical evidence in the record, including the lack of any medically-supported restrictions imposed by a treating physician.

Based on the foregoing, the undersigned cannot conclude that the ALJ's finding were not based on substantial evidence in the record.  In this Circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.  After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial

evidence.

## III.  RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that plaintiff's motion for

summary judgment be **DENIED**, that defendant's motion for summary judgment

be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## IV.  REVIEW

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 10 days of service,

as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file

specific objections constitutes a waiver of any further right of appeal.  *Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d

505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any

objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections,

the opposing party may file a response.  The response must not exceed 20 pages in

length unless such page limit is extended by the Court.  The response must address

specifically, and in the same order raised, each issue contained within the

objections by motion and order.  If the Court determines any objections are

without merit, it may rule without awaiting the response to the objections.

                                          s/Michael Hluchaniuk      

Date: January 8, 2009                    Michael Hluchaniuk
                                          United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

     I certify that on January 8, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: <u>Judith E. Levy, AUSA, Mikel E. Lupisella, and Commissioner of Social Security</u>, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>not applicable</u>.

                                          s/Darlene Chubb        
                                        Darlene Chubb
                                        Judicial Assistant